## WINDSOR BAKER *vs.* BETSY BAKER.

### November 11, 1875.

**Husband and Wife—Purchase by Wife of Land Mortgaged by Husband after Foreclosure and Expiration of Time for Redemption.**—The parties were husband and wife, and lived as such for several years on a farm. The husband, the wife not joining in it, executed a mortgage on the farm, which was foreclosed, and the farm bid in by H. B. U., and, there being no redemption, the title of the purchaser became absolute. The husband was then sixty-one or sixty-two years old, and was, and had been for a long time, in feeble health, and of somewhat feeble mind, although not incapacitated to transact ordinary business; he was without energy of character, and indolent, shiftless and negligent in business matters. The wife was twenty-seven years younger, was a vigorous, energetic woman, inclined to take the lead in the control and management of their business affairs, and from this disposition, and the necessity arising from the feeble health and indolent nature of her husband, she had been for years in the habit of taking upon herself the lead of her husband in managing most of their business, but he retained, nominally at least, general charge of the land in question. After the time for redeeming the land from the foreclosure had expired the defendant first learned of it, and informed the plaintiff, and requested him to take steps to redeem or get the land back. Shortly before that time he had been sick, and he was then in feeble health, and unable to leave home to attend to the matter. He took no steps to attend to the matter, nor did he request her to attend to it for him. She then went to H. B. U., and agreed to pay him $350.00 if he would let her redeem the land, then worth $3,500.00. H. B. U. knew that she was the wife of the mortgagor, and consented to convey for so small a sum in consideration of the fact that the land was going for the benefit of the mortgagor or his family, though it was wholly a matter of indifference to him whether he conveyed to the husband or wife. She took the conveyance to herself, and paid the consideration with money borrowed on her own credit, to secure which she gave her own note and a mortgage on the farm. The plaintiff was ignorant of what she had done, and made no enquiry, and did not interest himself in the matter. *Held,* that no trust in favor of the husband arose upon the conveyance to the wife.

Appeal by plaintiff from a judgment of the district court for Winona county, *Mitchell*, J., presiding.

*Thomas Wilson* and *W. H. Yale*, for appellant.

*Simpson & Wilson* and *Lloyd Barber*, for respondent.

GILFILLAN, C. J. The object of this action was to have a conveyance of land from H. B. Upham to the defendant adjudged to be in trust for the plaintiff. The facts found by the court below, so far as we deem them material, are briefly these : In 1857 the defendant was the owner of the land in controversy. The parties were husband and wife, and lived together on the land from that time till 1868. In 1857 the plaintiff, defendant not joining with him, executed a mortgage upon the land. In 1863 the mortgage was foreclosed by advertisement, and the land purchased by H. B. Upham, and, the land not being redeemed, his title became absolute in November, 1864.

The plaintiff was then sixty-one or sixty-two years old, and was, and had been for a long time, in feeble health, and of somewhat feeble mind, though not incapacitated to transact ordinary business ; he was without energy of character, and apparently shiftless and negligent in business matters. The defendant, some twenty-seven years younger than plaintiff, was a vigorous, energetic woman, inclined to take the lead, and control and manage their business affairs, and from this disposition, and also from the necessity arising from the feeble health and indolent nature of the plaintiff, had been for years in the habit of taking upon herself the lead of her husband in the management of most of their business affairs, although plaintiff seems to have had, nominally at least, general charge of the land in question.

In June, 1865, the defendant first learned of the foreclosure, and that the time for redemption had expired, and informed plaintiff of it, and requested him to take steps to redeem or get the land back. Shortly before that time plaintiff had been sick, and was then in feeble health, and unable to travel or to leave home to attend to the matter.

He took no steps to get the land back, nor did he request her to attend to the matter, nor to see Upham for him in regard to it, but, according to his usual custom, seems to have left it to her to do as she pleased, without any directions or instructions from him. She then went to Upham, and agreed that she would pay him $350.00 if he would let her redeem the land, then worth $3,500.00. Upham knew that she was the wife of the mortgagor, and consented to convey for so small a sum in consideration of the fact that the land was going for the benefit of the mortgagor or his family, though it was wholly a matter of indifference to him whether he conveyed to plaintiff or defendant.

The defendant took a conveyance to herself from Upham, and paid the consideration with money borrowed upon her own credit, to secure which borrowed money she gave her own note and a mortgage on the land, and she afterwards paid this from rents derived from the land. Of her borrowing the money, and taking the deed in her own name, plaintiff appears to have been ignorant, and does not seem to have enquired about, or interested himself in, the matter. Some time in the winter of 1865–66 she informed him that she had taken the deed in her own name, and claimed the right to control the land as her own, to which plaintiff does not appear to have made any objection. From the spring of 1866 she has rented the land as her own, except a garden or other small piece not rented, which plaintiff continued to cultivate. She abandoned him in 1868.

The suit is brought on the theory that from these facts, upon the conveyance to defendant, a trust resulted in favor of plaintiff. If any such trust exists, it arose upon the execution of the deed to defendant, and could not arise upon any facts occurring since, although it is proper to refer to such subsequent facts to show the character of the transaction up to the time of the execution of the deed. At that time the plaintiff had no title or estate in the land. Upham was the absolute owner, subject to the defendant's right of

dower. To make the defendant's purchase from Upham enure to the benefit of plaintiff on the ground of a trust, the defendant must, as between her and plaintiff, have occupied a fiduciary relation to the property—some relation the duties of which made it obligatory upon her to purchase for him, or which forbade her purchasing for her own benefit. Such relation would not grow out of the relation of husband and wife alone. The law requires of the husband or wife the utmost good faith when dealing with the property or rights of the other, and any such dealings will be jealously scrutinized to prevent either obtaining through fraud, concealment, or undue influence, an unjust advantage with respect to the property of the other. But neither law nor equity would attempt to define or enforce the moral or religious duties of one to the other. Certainly there is no legal duty on the part of either, growing out of the marriage relation alone, to purchase property for the benefit of the other.

In this case the defendant did not stand as her husband's agent in the purchase by reason of any express appointment or request to act as such. In making the purchase she did not assume to act as his agent. She not only took the conveyance as principal, but as principal, and on her own credit, raised the money to pay for it. If she had a right, in the absence of any request or instructions in the matter from her husband, to make the purchase as principal, and not as his agent merely, that is an end of the case.

The only suggestion that she had not such a right is that—because by reason of her superior strength of character, and of his feebleness, mental and physical, and natural indolence, she had always assumed, and had been permitted by him to assume and exercise, a controlling part in the management of their business and property—she stood in a fiduciary relation to this land. This might have been so if he had had any interest in the land to be protected by the purchase from Upham, in which case the protection of that interest by the purchase might be deemed a part of the

business which she had always taken the lead in managing for her husband, and her purchase as only a continuance of her management for him. But he had no interest in the land for her to protect by her management. It stood, so far as he was concerned, precisely as though the land had never been his, and it might be purchased by any person—by him, by her, or any one else. The fact that she had always taken the lead in managing his or their business and affairs —that business not extending, so far as the case shows, beyond the care of the family and of the farm on which they lived while it belonged to him—created no legal duty upon her to make new purchases for his benefit, nor to repurchase for him the farm after his title to it had ceased. There was no reason, therefore, in law or equity, why she might not purchase the land just as any other person might.

Judgment affirmed.